KELLIE WHITE GRAZIOSI )
                      )
      Plaintiff )
                      )
v. )
                      )
METLIFE INVESTORS USA )
INSURANCE COMPANY )
                      )
      Defendant and )   CIVIL ACTION
      Plaintiff-in-Counterclaim )
                      )   FILE NO.  3:11-CV-00080-CAR
v. )
                      )
EUGENE TARASZKA and ANN )
TARASZKA, Individually; and )
KEN TARASZKA, M.D. as Administrator )
of the Estate of DR. STEVEN TARASZKA )
                      )
Defendants-in-Counterclaim )

### MEMORANDUM IN SUPPORT OF DEFENDANT
### METLIFE INVESTORS USA INSURANCE COMPANY'S
### MOTION FOR SUMMARY JUDGMENT

Now comes Defendant and Plaintiff-in-Counterclaim METLIFE INVESTORS USA

INSURANCE COMPANY ("MetLife"), and submits this memorandum in support of its motion

for summary judgment.

## I.       Introduction

Plaintiff Kellie Graziosi brought this action against MetLife seeking to recover $1 million

in disputed death benefits under MetLife's Policy No. 206153777USU ("the policy"), a "bad

faith" penalty, and an award of attorneys' fees.  In her complaint, Plaintiff claimed that MetLife

was in breach of contract and acted in "bad faith" by not immediately paying her the benefits.

Plaintiff alleged, *inter alia*, that "no one other than Plaintiff has made any valid claim that he/she

is a beneficiary of the . . . Policy," and "[a]ny assertion that Plaintiff is not the rightful beneficiary of the MetLife Policy and/or that Dr. Taraszka's death was not accidental is patently false." (Complaint, ¶¶ 22, 26, attached to Notice of Removal, Record Doc. no. 1.)

MetLife filed a counterclaim-in-interpleader, requesting permission to deposit the death benefits into the registry of the Court, plus interest, and filed a motion requesting the Court to join Eugene, Ann, and Ken Taraszka as Defendants-in-interpleader. (Record Doc. nos. 5 and 7.) MetLife did not dispute that benefits were payable under the policy, but asserted that interpleader was appropriate to relieve MetLife of having to determine, at its peril, to whom benefits should be paid. MetLife showed that because it had been sued by Plaintiff and had been threatened with suit by the surviving family members of Dr. Steven Taraszka, it had a reasonable good faith fear of multiple vexation and/or litigation over the death benefits.

Nevertheless, Plaintiff strenuously resisted interpleader, filing (1) a motion to dismiss MetLife's counterclaim-in-interpleader, and (2) a motion for judgment on the pleadings on her breach of contract claim against MetLife. (Record Doc. nos. 9, 15.) In an order denying both of Plaintiff's motions, and granting MetLife's motion to join the Taraszkas, the Court found that "this is a proper action for interpleader," and noted that MetLife "showed that it had received multiple and conflicting informal claims to the benefits, and that it had received multiple threats of multiple litigation over the benefits from Plaintiff and Ken, Eugene, and Ann Taraszka." (Order, pp. 3, 7; Record Doc. no. 31.)

Regarding the Taraszkas, the Court emphasized:

[A]ll three seem to oppose Plaintiff's entitlement to payment under the policy which may leave MetLife subject to a substantial risk of incurring inconsistent and multiple obligations. Certainly if they are not joined, but instead file separate actions opposing payment to Plaintiff and claiming entitlement to the benefits, MetLife would be exposed to a substantial risk of inconsistent and multiple obligations if Plaintiff's action were determined in her favor, but the other parties

separate actions were determined in their favor.  Further, the litigious attitudes of the Taraszka family, at the very least, make Defendant's fear of inconsistent and multiple obligations reasonable.

(*Id.* at p. 6.)

The Court ordered the Taraszkas to be joined as Defendants-in-interpleader, and directed MetLife to deposit the death benefits into the Court's registry, plus applicable interest.  (*Id.* at p. 8.)  On November 21, 2011, MetLife deposited $1,069,810 into the Court's registry, representing the benefits payable, plus interest.  (Record Doc. no. 61.)  The Taraszkas appeared in the case, and asserted "Claims which the Taraszkas have to the Benefits of the MetLife Policy."  (Record Doc. no. 44.)

Among the assertions made by the Taraszkas in support of their claims are:

32.

KELLIE WHITE GRAZIOSI intentionally administered or otherwise provided Fentanyl to DR. STEVEN TARASZKA with the intent to kill DR. STEVEN TARASZKA with the intentional administration of Fentanyl resulting in the death of DR. STEVEN TARASZKA.

33.

DR. STEVEN TARASZKA died as a result of ingesting, imbibing or otherwise negligently or intentionally receiving the Fentanyl administered or otherwise provided to him by KELLIE WHITE GRAZIOSI.

(Record Doc. no. 44, pp. 13-14.)

By asserting such claims, the Taraszkas made clear that, consistent with their pre-litigation statements to MetLife, they dispute that the cause of Dr. Taraszka's death was an accident.  These allegations squarely implicate Georgia's "slayer statute," and further support the reasonableness of MetLife's interpleader.[1]

_____

[1] The "slayer statute" provides that "[n]o person who commits murder or voluntary manslaughter or who conspires with another to commit murder shall receive any benefits from any insurance

Now that MetLife has fully discharged its responsibilities with respect to the policy, and all claimants to the proceeds are joined and have asserted their claims to the interpleader fund, MetLife should be dismissed from this action with prejudice and Plaintiff and the Taraszkas should be permanently enjoined from suing MetLife again with respect to the policy or the proceeds.[2] The Taraszkas have consented to MetLife's dismissal, but Plaintiff refuses to consent. (*See* email exchanges with counsel for Plaintiff and the Taraszkas, Exhibit 20.) Plaintiff apparently wishes to pursue her "bad faith" claim against MetLife, notwithstanding the Court's express determinations that interpleader was appropriate, and that MetLife's fear of inconsistent and multiple obligations was reasonable. Because Plaintiff's "bad faith" claim fails as a matter of law, MetLife is entitled to summary judgment on that claim.

In addition to its dismissal with prejudice, MetLife should be awarded its reasonable attorney's fees from the interpleader fund. This award is especially suitable in this case, where Plaintiff unreasonably resisted interpleader at every turn -- moving to dismiss MetLife's counterclaim-in-interpleader, moving for judgment on the pleadings, opposing MetLife's motion to join the Taraszkas as interpleader Defendants, pursuing discovery from MetLife in furtherance of her meritless "bad faith" claim, and rejecting MetLife's multiple requests to consent to its dismissal from the action. MetLife has incurred substantial attorney's fees in what should have

---

policy on the life of the deceased, even though the person so killing or conspiring be named beneficiary in the insurance policy. . . . All right, interest, estate, and proceeds in such an insurance policy shall go to the other heirs of the deceased who may be entitled thereto by the laws of descent and distribution of this state, unless secondary beneficiaries be named in the policy, in which event such secondary beneficiaries shall take." O.C.G.A. § 33-25-13.

[2] The Court previously enjoined the Taraszkas from prosecuting any claim against MetLife affecting the death benefits, except by way of this interpleader action. (Record Doc. no. 31, p. 8.)

been a straightforward, expeditious interpleader action due to Plaintiff's stubbornly litigious conduct.[3]

## II.     Statement of Material Facts

On or about July 17, 2006, Dr. Steven Taraszka signed and submitted to MetLife a Personal Life Insurance Policy Application for Term Conversion.  (Affidavit of Regina Solomon-Stowe, Exhibit 1; Application attached to and forming part of the policy, Exhibit 2.).  In the application, Dr. Taraszka designated Plaintiff as the primary beneficiary of benefits payable under the policy, and his father, Eugene Taraszka, as the contingent beneficiary.  (*Id.*)  In response to the application, MetLife issued to Dr. Taraszka Policy No. 206153777USU, a flexible premium adjustable life insurance policy, effective July 19, 2006, providing a death benefit of $1,000,000.  (*Id.*)

Dr. Taraszka died on November 19, 2010.  (Solomon-Stowe Affidavit, Exhibit 1; Death Certificate, Exhibit 3.)  Upon learning of Mr. Taraszka's death, MetLife sent a claim packet to Plaintiff on December 8, 2010, asking Plaintiff to complete a claim form and to submit a certified copy of Taraszka's death certificate.  (Solomon-Stowe Affidavit, Exhibit 1; December 8, 2010 letter enclosing the claim packet, Exhibit 4.) In a letter dated December 21, 2010, Burke Johnson, an attorney claiming to represent Ken Taraszka in his capacity as Temporary Administrator of the Estate of Dr. Taraszka, contacted MetLife stating in part:

> It is our understanding that your company issued a policy insuring the life of Steven Taraszka, which policy remained in effect at the time of his death.  We further understand that Kelly [sic] Graziosi has filed a claim for the benefits payable upon Steven Taraszka's death.

---

[3] Plaintiff has indicated her intent to depose two MetLife witnesses, including a Rule 30(b)(6) corporate designee on no fewer than *twenty one* (21) subjects.  If these depositions proceed, MetLife will request its attorney's fees incurred in preparing for and attending them.

Please be advised that there is an ongoing investigation into the circumstances surrounding the death of Steven Taraszka. We hereby request that MetLife defer payment of the life insurance benefits at issue pending the outcome of this investigation.

(Solomon-Stowe Affidavit, Exhibit 1; December 21, 2010 letter, Exhibit 5.)

In a claim form dated January 6, 2011, Plaintiff submitted to MetLife a claim for benefits under the policy, along with a certified copy of Taraszka's death certificate. (Solomon-Stowe Affidavit, Exhibit 1; Claim form, Exhibit 6; Death certificate, Exhibit 3.)

In a letter dated January 11, 2011, MetLife informed Mr. Johnson in part that:

[A] Claim has been received from the beneficiary Kellie W. Graziosi and we are legally obligated to make payment. Please let us know if you have any objections at this time to us making payment. If you still wish for us to defer any payments, we will need to be legally restrained.

(Solomon-Stowe Affidavit, Exhibit 1; January 11, 2011 letter to Mr. Johnson, Exhibit 7.)

In a letter dated January 11, 2011, MetLife informed Plaintiff in part that:

We have been contacted by Attorney Burke Johnson who represents the Estate of Steven R. Taraszka, M.D. We have been requested to defer any payments as they are making inquiries into the circumstances surrounding Dr. Taraszka's death. Attorney Johnson is being notified that we have received your claim and are ready to proceed.

Your patience is appreciated as we wait for a response from Attorney Johnson.

(Solomon-Stowe Affidavit, Exhibit 1; January 11, 2011 letter to Plaintiff, Exhibit 8.)

In a letter to MetLife dated January 17, 2011, Mr. Johnson stated in part:

Please be advised that we are continuing to investigate the death of the policyholder, Dr. Steven Robert Taraszka. We thus again request that MetLife defer payment of the life insurance benefits at issue here pending the outcome of this investigation.

(Solomon-Stowe Affidavit, Exhibit 1; January 17, 2011 letter, Exhibit 9.)

By letter dated January 20, 2011, Jeremy Kilburn, attorney for Plaintiff, wrote to MetLife requesting that MetLife process Plaintiff's claim. In the letter, Mr. Kilburn declared that "[t]he

only investigation of which we are aware is the one apparently being conducted by Mr. [Burke] Johnson himself, or his lawfirm, as the Walton County coroner has opined that the death was accidental."  (Solomon-Stowe Affidavit, Exhibit 1; January 20, 2011 letter, Exhibit 10.)

On January 24, 2011, MetLife received a telephone call from attorney Glenn Moffett in which Mr. Moffett said he had been retained by family members of Dr. Taraszka and Taraszka's estate, and that he would be filing suit naming MetLife as a defendant, and requesting MetLife to refrain from making payment of benefits. (Solomon-Stowe Affidavit, Exhibit 1; January 24, 2011 telephone notes, Exhibit 11.)

In a letter dated January 24, 2011, Mr. Moffett wrote to MetLife reiterating that he represented the parents of Taraszka in connection with "their claim to the proceeds of [the] policy," and restating his objection to "any payment of the proceeds of the policy to Kellie White Plaintiff or anyone else until a court of appropriate jurisdiction so orders."  (Solomon-Stowe Affidavit, Exhibit 1; January 24, 2011 letter, Exhibit 12.)

On January 25, 2011, Mr. Kilburn called MetLife inquiring about the status of Plaintiff's claim.  In a telephone conference with Mr. Kilburn, a representative of MetLife explained that MetLife had been informed by Mr. Moffett that it would be named in a lawsuit regarding the proceeds of the policy.  Mr. Kilburn indicated that he understood.  (Solomon-Stowe Affidavit, Exhibit 1; January 25, 2011 telephone conference notes, Exhibit 13.)

In a letter dated January 27, 2011, Mr. Moffett wrote to MetLife stating in part:

This is my second letter to you and to confirm the following.  As you know from my previous letter to you of January 24th, the undersigned and this firm represent the parents of Steven R. Taraszka, M.D., as well as the Estate of Steven R. Taraszka, M.D. regarding each of their claims to the proceeds of the above insurance policy as finally determined.  The parents are Eugene Taraszka, father and Ann Taraszka, mother of Steven R. Taraszka, M.D., deceased.  This is to further confirm that all of my clients object to any voluntary payment of the proceeds of this life insurance policy and to refrain making any voluntary

payments of benefits under this policy to anyone including Ms. Kellie White Graziosi or anyone else until your company is ordered to do so from a court of appropriate jurisdiction. This is to further advise you that we are in the process of preparing legal proceedings in this matter which will be promptly filed in Federal Court and which will request that a restraining order be issued against MetLife Investors USA Insurance Company to either hold the proceeds of this policy or pay the proceeds into court for later determination by the court as to the proper party or parties to whom such proceeds should be paid under the laws of the State of Georgia. As soon as the lawsuit is prepared and filed, I will immediately forward a courtesy copy to you.

(Solomon-Stowe Affidavit, Exhibit 1; January 27, 2011 letter, Exhibit 14.)

By letter dated February 1, 2011, MetLife wrote to Mr. Kilburn acknowledging his letter of January 20, 2011 and the subsequent telephone conference of January 25, 2011. In the letter, MetLife stated in part:

As discussed, we have been contacted by Attorney F. Glenn Moffett, Jr. regarding the proceeds payable on this policy. Attorney Moffett has informed us that he is in the process of preparing legal proceeding[s] which will be filed in court to request that a restraining order be issued against MetLife Investors USA Insurance Company to either hold the proceeds of this policy or pay the proceeds into the court for later determination by the court as to the payee. Therefore, we are unable to proceed with your client's claim at this time.

(Solomon-Stowe Affidavit, Exhibit 1; February 1, 2011 letter, Exhibit 15.)

By letter dated February 1, 2011, MetLife wrote to Mr. Moffett acknowledging receipt of his January 24 and January 27, 2011 letters. In the letter, MetLife stated in part:

We will continue to defer payment on this policy pending receipt of an order restraining us from making payment. Please note, Ms. Kellie Graziosi was named beneficiary of this policy at issue and based on the ruling by the medical examiner that the manner of death was an accident, this claim is in order for payment. Please furnish the basis for your request withholding payment.

(Solomon-Stowe Affidavit, Exhibit 1; February 1, 2011 letter, Exhibit 16.)

On February 1, 2011, Mr. Moffett wrote to MetLife enclosing "a courtesy copy of the lawsuit which [he was] preparing to file in the United States District Court, Middle District of Georgia, Athens Division, against Ms. Kellie White Graziosi." Mr. Moffett requested MetLife to

"acknowledge that MetLife will not voluntarily release any funds to anyone without court approval." (Solomon-Stowe Affidavit, Exhibit 1; February 1, 2011 letter and the enclosed Complaint for Damages, Exhibit 17.)

On February 28, 2011, the Taraszkas brought suit against Plaintiff in the Superior Court of Walton County, Georgia, where that litigation is currently pending as Civil Action File No. 11-0354-1. Although the Taraszkas' lawsuit did not name MetLife as a defendant, O.C.G.A. § 9-11-15 of the Georgia Civil Practice Act allows the Taraszkas to amend their complaint as a matter of course and without leave of court at any time before entry of a pretrial order.

On April 15, 2011, Plaintiff brought the instant lawsuit against MetLife in the Superior Court of Walton County, which was timely removed to this Court. Along with the complaint, Plaintiff served interrogatories and requests for production of documents on MetLife. (Record Doc. No. 1, Exh. 4.) On July 7, 2011, MetLife timely answered the complaint and filed a counterclaim-in-interpleader, requesting authorization to pay into the Court's registry the policy proceeds, together with applicable interest. (Record Doc. No. 5.) On July 15, 2011, MetLife filed a motion to join the Taraszkas as interpleader Defendants. (Record Doc. No. 7.) On July 28, 2011, Plaintiff filed a motion to dismiss MetLife's counterclaim-in-interpleader, and a motion for a hearing. (Record Doc. No. 9, 10.) On August 4, 2011, Plaintiff filed a brief in opposition to MetLife's motion to join the Taraszkas as interpleader Defendants. (Record Doc. No. 12.) On August 19, 2011, Plaintiff filed a motion for judgment on the pleadings. (Record Doc. No. 15.) On September 2, 2011, MetLife filed a consolidated brief opposing Plaintiff's motions to dismiss and for judgment on the pleadings, and reply brief in support of its motion for joinder of the Taraszkas. (Record Doc. No. 22.)

On October 6, 2011, the Taraszkas filed a Second Amended Complaint for Damages against Plaintiff. (*See* Second Amended Complaint for Damages, Exhibit 18.) In the Second Amended Complaint, the Taraszkas made allegations regarding Plaintiff's involvement in the death of Dr. Steven Taraszka, and add a Count for "wrongful death." (*Id*. at ¶¶ 40-41. *See also*, ¶¶ 134-43.)

On October 12, 2011, MetLife served responses to Plaintiff's interrogatories and requests for production of documents. On October 19, 2011, MetLife produced documents responsive to Plaintiff's discovery requests, and a privilege log identifying withheld privileged documents.

On October 19, 2011, the Court issued an Order denying Plaintiff's motions to dismiss and for judgment on the pleadings, and granting MetLife's motion for joinder of the Taraszkas. (Order, Record Doc. No. 31.) The Court found that "this is a proper action for interpleader," and noted that MetLife "showed that it had received multiple and conflicting informal claims to the benefits, and that it had received multiple threats of multiple litigation over the benefits from Plaintiff and Ken, Eugene, and Ann Taraszka." (*Id*. at pp. 3, 7.) The Court emphasized that the Taraszkas "seem to oppose Plaintiff's entitlement to payment under the policy which may leave MetLife subject to a substantial risk of incurring inconsistent and multiple obligations," and further, that "the litigious attitudes of the Taraszka family, at the very least, make [MetLife's] fear of inconsistent and multiple obligations reasonable." (*Id*. at p. 6.)

The Court ordered the Taraszkas to be joined as Defendants-in-interpleader, and directed the United States Marshals Service to personally serve them with process. (*Id*.) The Court directed MetLife to deposit the death benefits into the Court's registry, plus applicable interest. (*Id*. at p. 8.) On November 21, 2011, MetLife deposited $1,069,810 into the Court's registry, representing the benefits payable, plus interest. (Record Doc. no. 61.) The Taraszkas were

served, and appeared in the case, asserting "Claims which the Taraszkas have to the Benefits of the MetLife Policy." (Record Doc. no. 44.)

Among the assertions made by the Taraszkas in support of their claims are that Plaintiff "intentionally administered or otherwise provided Fentanyl to DR. STEVEN TARASZKA with the intent to kill DR. STEVEN TARASZKA with the intentional administration of Fentanyl resulting in the death of DR. STEVEN TARASZKA," and that "DR. STEVEN TARASZKA died as a result of ingesting, imbibing or otherwise negligently or intentionally receiving the Fentanyl administered or otherwise provided to him by KELLIE WHITE GRAZIOSI." (Record Doc. no. 44, pp. 13-14.)

In support of these allegations, on March 30, 2012, the Taraszkas served the expert disclosure and report of Ken Taraszka, M.D. (Expert disclosure and report, Exhibit 19.) In the report, Dr. Taraszka expresses numerous opinions regarding the death of Steven Taraszka, including that an autopsy revealed "eight times the high normal therapeutic limit of Fentanyl" in Steven Taraszka's body, and that Graziosi "supplied the Fentanyl to Steven Taraszka in [a Dairy Queen] Blizzard that she provided to him." (*Id.*)

### III.    Argument and Citation of Authorities

**A.    MetLife should be dismissed with prejudice from this action, and granted an injunction against further litigation by the Defendants.**

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 Fed. Appx. 244, 248 (11th Cir. 2009). A disinterested stakeholder who has filed an action in interpleader may be dismissed from the case and discharged from further liability to the claimants. *Prudential Ins. Co. of Amercia v. Boyd*, 781 F. 2d 1494 (11th Cir. 1986); *Nat'l Life*

*Ins. Co. v. Alebik-Eisner*, 582 F. Supp. 2d 1362 (N.D. Ga. 2008). "The law normally regards the plaintiff in an interpleader action as having discharged of full responsibility regarding the interpleaded funds when the funds have been paid into the registry of the court, and the parties have had notice and opportunity to be heard." *American Gen. Life & Accident Ins. Co. v. Story*, 2007 U.S. Dist. LEXIS 28966, *7-8 (S.D. Ga. 2007).

Here, having admitted that benefits were payable and having paid the death benefits, plus interest, into the registry of the Court, MetLife has fulfilled its obligations. *See Chase Manhattan Bank v. Madalay Shores Coop. Hous. Ass'n, Inc.*, 21 F.3d 380 (11th Cir. 1994) ("[O]nce the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied.") Consequently, MetLife should be discharged from further liability to the interpleader Defendants, and MetLife should be dismissed with prejudice from this action. *See American Nat'l Ins. Co. v. Glass*, 2008 U.S. Dist. LEXIS 120900, *5 (M.D. Fla. May 20, 2008) ("If an interpleading plaintiff has no interest in the stake, he should be dismissed.").

The practice of discharging a disinterested interpleader plaintiff holds true regardless of the merits of the dispute between the defendants. *Alembik-Eisner*, 582 F. Supp. 2d at 1366 ("[A]n actual claim need not exist but rather only the possibility that more than one person will claim.") "[A] stakeholder, acting in good faith, may maintain a suit in interpleader for the purpose of ridding himself to the vexation and expense of resisting adverse claims, even though he believes that only one of them is meritorious." *Id.* at 1367 (quoting *Hunter v. Federal Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940)). "Of course, only one claim will ultimately be sustained." *Id.* "[B]ut that alone may not relieve the stakeholder of substantial risk of vexatious litigation." *First Interstate Bank of Oregon, N.A. v. United States*, 891 F. Supp. 1058, 1065 (S.

D. N. Y. 1992). As the Supreme Court stated in *Myers v. Bethlehem Corp.*, 303 U.S. 41, 51 (1938), "Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish that fact." Thus, "the stakeholder is not obliged at his peril to determine which claimant has the better claim." *Alembik-Eisner*, 582 F. Supp. 2d at 1367 (quoting *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957)).

Here, MetLife had reasonable and justifiable grounds to refrain from immediately paying benefits to Plaintiff or the Taraszkas, and to subsequently seek resolution of their claims via interpleader. The representations by counsel for Dr. Taraszka's father, mother, and brother (1) that Dr. Taraszka's death was under investigation, (2) that the Taraszkas had "claims" to the benefits, and (3) that the Taraszkas were planning to seek injunctive relief against MetLife to prevent payment of benefits to Plaintiff put MetLife in reasonable apprehension of multiple litigation over the death benefits. The Taraszkas, consistent with their pre-litigation statements to MetLife, have asserted claims to the interpleader fund and have made allegations invoking the Georgia "slayer statute."

In *Estate of Reyes-Wilson v. Metropolitan Life Ins. Co.*, 2010 U.S. Dist. LEXIS 133903 (D. Idaho Dec. 17, 2010), the district court was faced with facts similar to those here. The insured apparently committed suicide and Clint Wilson, her surviving husband, submitted a claim to MetLife for death benefits. No criminal charges were filed against Mr. Wilson, but before MetLife paid benefits, the company "received a letter dated March 11, 2010 from the Idaho State Department Insurance asking MetLife to refrain from distributing the death benefits to Mr. Wilson because the State had evidence suggesting that [the insured] did not commit suicide and Mr. Wilson may have been involved in her death." *Id.* at *2. Based on this communication, MetLife initiated an interpleader action.

In allowing MetLife to deposit the insurance benefits into the registry of the Court and discharging MetLife from the case, the Court noted that "to date, the questions surrounding [the insured's] alleged suicide have not been answered," and although "[n]o charges . . . have been filed against Mr. Wilson in connection with the death of [the insured] . . . if it is determined that Mr. Wilson contributed to [her] death, he will be prohibited under Idaho Code § 15-2-803 from collecting the death benefits payable by Metlife, and such proceeds will instead be awarded to [the insured's] minor children." *Id.* at *3. The court observed that, as here, "MetLife remains ready, willing and able to pay the death benefits in accordance with the terms of the [policy], but it cannot determine the proper beneficiary or beneficiaries of the life insurance benefits at issue without risking exposure of itself to multiple liability. As a disinterested stakeholder claiming no beneficial interest in the death benefits and seeking merely to discharge its duty, MetLife filed an interpleader action pursuant to Rule 22 of the Federal Rules of Civil Procedure." *Id.*

The court awarded MetLife its attorney's fees from the interpleader fund, and found Mr. Wilson's "bad faith" claim against MetLife to be unfounded, noting:

> [T]here is no evidence that MetLife acted in bad faith by refusing to disperse the death benefits to Mr. Wilson. MetLife had a legitimate basis for questioning whether Mr. Wilson should receive the benefits – i.e., a letter from a Senior Fraud Investigator of the Department of Insurance stating that Mr Wilson was a suspect in his wife's death. If Wilson were convicted of murdering his wife, Idaho's Slayer Statute would prohibit Wilson from receiving the death benefits. Idaho Code § 15-2-803 (2010). Furthermore, even if Mr. Wilson were not disqualified from receiving the death benefits as a consequence of a criminal proceeding, a civil cause of action could be brought against him to disqualify him from receiving the benefits. Under these facts, MetLife had a reasonable basis for withholding payment.

*Id.* at *7.

In its previous order, the Court determined that interpleader was appropriate, and that MetLife's fear of inconsistent and multiple obligations was reasonable. (Order, Record Doc. no.

31.) MetLife's reasonableness was further demonstrated by the claims made by the Taraszkas since their joinder as Defendants-in-interpleader. There being no further reason to keep MetLife in this case, and MetLife having fully discharged its responsibilities with respect to the policy, MetLife should be dismissed from this action with prejudice and Plaintiff and the Taraszkas should be permanently enjoined from instituting or prosecuting any action against MetLife with respect to the policy or death benefits.

## B.    Plaintiff's "bad faith" claim fails as a matter of law.

A claim under O.C.G.A. § 33-4-6 requires "refusal of the insurer" to pay benefits under an insurance policy within 60 days after a proper demand by the holder of the policy, and a finding that "such refusal was in bad faith." If these prerequisites are met, then the insurer "shall be liable to pay," in addition to the benefits owed, "not more than 50 percent of the liability of the insurer . . . or $5,000, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33-4-6(a).

"In order to prevail on a claim for an insurer's bad faith, the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith." *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 771, 458 S.E.2d 908 (1995). Because section 33-4-6 "imposes a penalty, it is strictly construed." *Id*. at 772. Consequently, "a proper demand for payment is essential for recovery." *Stedman v. Cotton States Ins. Co*., 254 Ga. App. 325, 327, 562 S.E.2d 256 (2002). A "notice of claim . . . is not the same as a demand for payment," and the "mere denial of a claim does not waive the statutory demand for payment requirement." *Id*. (citing *Guarantee Reserve Life Ins. Co. v. Norris,* 219 Ga. 573, 575, 134 S.E.2d 774 (1964)).

The demand "must give the insurer notice that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." *Arrow Exterminators v. Zurich Amer. Ins. Co.,* 136 F. Supp. 2d 1340, 1356 (N.D. Ga. 2001). "Although no particular language is required, the language used must be sufficient to alert the insurer that a bad faith claim will be asserted if the specific loss noted is not paid." *Id.* The insurer must be "alerted . . . that it [is] facing a bad faith claim for nonpayment of a loss within 60 days." *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 20, 648 S.E.2d 433 (2007).

Plaintiff failed to make a proper demand as required by Georgia law. The January 20, 2011 letter from her attorney to MetLife did not invoke the "bad faith" statute, did not mention a "bad faith" claim, and instead of reciting that MetLife had 60 days to make payment or face litigation, the letter simply requested a response within 10 days. (*See* Exhibit 10.) In no way could this letter be read to alert MetLife that it was facing a bad faith claim for nonpayment of benefits within 60 days.

Even assuming that the letter constituted a proper demand, Plaintiff's "bad faith" claim still fails. Many courts hold that interpleading stakeholders who retain no claim to the interpleader fund are not subject to "bad faith" claims because they have not "refused" payment. *See Monumental Life Ins. Co. v. Lyons-Neder*, 140 F. Supp. 2d 1265, 1270 (M.D. Ala. 2001) ("Because filing an interpleader action is equivalent to the plaintiff admitting that it is willing to pay the legitimate claimant, an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay . . . ."); *United States Trust Co. of N.Y. v. Alpert*, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998) (no authority supports the viability of a counterclaim which turns simply on whether the interpleader plaintiff acted properly in bringing the interpleader action).

As explained by the Supreme Court of Alabama in *Gilbert v. Congress Life Ins. Co.*, 646 So. 2d 592, 594 (Ala. 1994):

> By initiating an interpleader action, the stakeholder is admitting that it holds funds that are not its own, but says that it owes those funds to an undetermined party . . . . Because filing an interpleader action is equivalent to the plaintiff's admitting that it is willing to pay the legitimate claimant, an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay . . . . [A] stakeholder who interpleads the funds claimed has not refused to pay. To the contrary, by interpleading, [the stakeholder] paid to the court an amount that the parties do not dispute is the full amount due, although it did not pay the proceeds to [any particular claimant].

(Internal quotations omitted.)

But even if MetLife could be said to have "refused" to pay benefits to Plaintiff, she cannot show that MetLife acted in "bad faith." "To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith." *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355, 395 S.E. 2d 851 (1990), *cert. denied*, Sept. 4, 1990. The statute is "strictly construed and the right to such recovery must be clearly shown." *Florida Int'l Indem. Co. v. Osgood*, 233 Ga. App. 111, 116, 503 S.E. 2d 371 (1998).

The mere fact of nonpayment is "not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." *Osgood*, 233 Ga. App. at 115. Instead, "'bad faith' of the insurer means *a frivolous and unfounded refusal to pay a claim*." *United Serv. Auto. Assoc. v. Carroll*, 226 Ga. App. 144, 148, 486 S.E.2d 613 (1997) (emphasis added). In other words, "[i]f there are any reasonable grounds for an insurer to contest the claim, there is no bad faith." *Swyters v. Motorola Employees Credit Union*, 244 Ga. App. 356, 359, 535 S.E.2d 508 (2000). "[W]hen there is no evidence of unfounded reason for the nonpayment, or if the issue of liability

is close, the court should disallow imposition of bad faith penalties." *Osgood*, 233 Ga. App. at 115.

Plaintiff cannot credibly argue that MetLife "frivolously" refused to pay her claim, or that the basis for interpleader was "unfounded." MetLife was presented with conflicting claims to the benefits by claimants represented by counsel, and had been threatened with litigation. The Court has already determined that MetLife had reasonable grounds to refrain from immediately paying benefits to Plaintiff, and to seek resolution of Plaintiff's claim via interpleader. By definition, if MetLife acted reasonably in doing so, it did not act in "bad faith." Accordingly, MetLife is entitled to summary judgment on Plaintiff's "bad faith" claim.

**C.     MetLife should be awarded its reasonable attorney's fees.**

"In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stakeholder." *Boyd*, 781 F.2d at 1497. *Accord*, *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976) ("as a general rule, when an interpleader action is successful, the court often awards costs, as well as attorneys' fees, to the stakeholder"); *Prudential-Bache Sec., Inc. v. Tranakos*, 593 F. Supp. 783, 785 (M.D. Ga. 1984) ("it is within the sound discretion of the trial judge to award a disinterested stakeholder . . . the attorneys' fees and costs of bringing an interpleader action."). "The usual practice is to tax the costs and fees against the interpleader fund, although the court may tax the losing claimant directly when her conduct justifies doing so." *Boyd*, 781 F.2d at 1497.

To assess fees and costs in favor of the stakeholder, a court must find that a disinterested stakeholder, who has conceded that benefits are payable, has deposited the disputed funds into the Court's registry, and has sought a discharge from liability. *Septembertide Publishing Co. B.*

*V. v. Stein and Day, Inc.*, 884 F.2d 675 (2d Cir. 1989) (citing 3A MOORE'S FEDERAL PRACTICE, ¶ 2.16[2] (2d ed. 1989)).  These prerequisites are satisfied here.  Hence, assuming the Court finds that attorney's fees and costs should be awarded to MetLife, the only remaining question is what constitutes a fair award.

"Among the factors to be considered in determining a fair award of attorneys fees are: (1) whether the case is simple or involved; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefited the stakeholder; and (5) whether the claimants improperly protracted the proceedings."  *Prudential Prop. & Casualty Co. v. Baton Rouge Bank & Trust Co.*, 537 F. Supp. 1147, 1150 n.2 (M.D. Ga. 1982).  In addition, the Court may award attorney fees incurred by the stakeholder due to a claimant's unjustified resistance to interpleader.  *Alembik-Eisner*, 582 F. Supp. 2d at 1372 (awarding attorney's fees where "the nature of the Trustee's counterclaim did serve to protract the proceedings. It [was] not clear to the court why the Trustee did not proffer her claim to the insurance benefits without bringing unnecessary state law [breach of contract and bad faith] claims into the interpleader action."); *Metropoiltan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 752 (D. Tex. 2001) (awarding additional attorney fees to the interpleader plaintiff where a defendant claimant "protracted the proceedings by pursuing a [meritless] countersuit . . . ."); *A/S Kredit Pank v. Chase Manhattan Bank*, 303 F.2d 648, 649 (2d Cir. 1962).

Although many interpleader cases are simple, this one was not, primarily because Plaintiff resisted interpleader so strenuously.  Plaintiff protracted the litigation and caused MetLife to incur unnecessary attorney fees and costs in (1) opposing Plaintiff's motion to dismiss MetLife's counterclaim-in-interpleader, (2) opposing Plaintiff's motion for judgment on

the pleadings, (3) responding to written discovery in furtherance of Plaintiff's breach of contract and "bad faith" claims against MetLife, (3) producing documents requested by defendant in furtherance of these claims, and (4) engaging in unnecessary discovery skirmishes with Plaintiff's counsel. Counsel for MetLife urged Plaintiff's attorney more than once to abandon their "bad faith" claim and consent to MetLife's dismissal, to no avail. (*See* emails, Exhibit 20.)

By prosecuting an unnecessary and meritless "bad faith" claim, Plaintiff attempted to defeat the purpose of the interpleader statute and caused MetLife to incur attorney fees and costs that it should not bear. Accordingly, MetLife should be awarded its reasonable attorney's fees and costs from the interpleader fund.

## IV.     Conclusion

WHEREFORE, Defendant METLIFE INVESTORS USA INSURANCE COMPANY prays that its motion for summary judgment be granted.

This 19th day of April 2012.

*s/ Elizabeth J. Bondurant*
Elizabeth J. Bondurant
Georgia Bar No. 066690
*s/Aaron E. Pohlmann*
Aaron E. Pohlmann
Georgia Bar No. 582685

Attorneys for Defendant and Plaintiff-in-Interpleader
MetLife Investors USA Insurance Company

SMITH MOORE LEATHERWOOD LLP
1180 West Peachtree Street, Suite 2300
Atlanta, Georgia 30309
(404) 962-1000 (telephone)
(404) 962-1200 (facsimile)
*lisa.bondurant@smithmoorelaw.com*
*aaron.pohlmann@smithmoorelaw.com*

## CERTIFICATE OF SERVICE

The foregoing pleading was filed electronically with the Clerk of Court using the

CM/ECF system, which will automatically send e-mail notification of such filing to the

following attorneys of record:

Joseph C. Sharp
Ashe, Rafuse & Hill, LLP
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232

Jeremy Vern Kilburn
Preston & Malcom, P.C.
P.O. Box 984
Monroe, Georgia 30655

This 19th day of April, 2012.

*s/ Aaron E. Pohlmann*
Aaron E. Pohlmann