IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| KELLIE WHITE GRAZIOSI, | : | |
| | : | |
| Plaintiff/Counter-Defendant, | : | |
| | : | |
| v. | : | |
| | : | No. 3:11-CV-80 (CAR) |
| METLIFE INVESTORS USA INSURANCE COMPANY, | : | |
| | : | |
| Defendant/Counter-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EUGENE TARASZKA and ANN TARASZKA, Individually, KEN TARASZKA, M.D., as Administrator of the Estate of DR. STEVEN TARASZKA, | : | |
| | : | |
| Counter-Defendants. | : | |
| _____ | : | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant MetLife Investors USA Insurance Company's ("MetLife") Motion for Summary Judgment [Doc. 49] as to Plaintiff Kellie White Graziosi's action to recover life insurance policy proceeds, a bad faith penalty, and litigation expenses. Having considered the relevant facts, applicable law, and the Motion and responses thereto, MetLife's Motion for Summary Judgment [Doc. 49] is **GRANTED in part** and **DENIED in part**. In particular, MetLife's request to be

1

discharged from the instant action is **GRANTED**, and MetLife's request for attorney's fees is **DENIED**.

## BACKGROUND

The instant action arises out of Defendant MetLife's alleged failure to pay the proceeds of a life insurance policy to the undisputed primary beneficiary, Plaintiff Kellie Graziosi. Also pending before the Court is a dispute involving the disbursement of the benefits between Plaintiff and interpleaded Counter-Defendants Ken, Eugene, and Ann Taraszka. This Order only addresses MetLife's Motion. The facts in the light most favorable to Plaintiff, the non-moving party, are as follows.

Effective July 19, 2006, MetLife issued Dr. Steven Taraszka a life insurance policy in the amount of $1,000,000.00, naming Plaintiff, his domestic partner, as the primary beneficiary and Eugene Taraszka, his father, as the contingent beneficiary (the "Policy"). According to his death certificate, Dr. Taraszka died of an accidental drug overdose on October 19, 2010.

Shortly thereafter on December 8th, Kathleen Medeiros, a senior claim approver for MetLife, sent Plaintiff claim application forms that required a certified copy of Dr. Taraszka's death certificate. On December 22nd, before Plaintiff had submitted her claim, MetLife received a letter from Dr. Taraszka's family: his father and contingent beneficiary, Eugene Taraszka; his brother and estate administrator, Ken Taraszka; and his mother, Ann Taraszka (collectively the "Taraszkas"). Therein, the Taraszkas asked

MetLife to refrain from paying Plaintiff the proceeds pending the outcome of "an ongoing investigation into the circumstances" of Dr. Taraszka's death.[1]

Two weeks later, on January 6, 2011, Plaintiff submitted her claim to the proceeds and a certified copy of Dr. Taraszka's death certificate. The record indicates that MetLife would have, but for the Taraszkas' involvement, paid the death benefits to Plaintiff. In other words, Plaintiff, as primary beneficiary, had properly fulfilled all of her obligations. Instead, however, Medeiros identified the Taraszkas as competing claimants and designated Plaintiff's claim as adverse, thereby precluding immediate payment of the proceeds to Plaintiff. Medeiros promptly informed Plaintiff of the Taraszkas' investigation and their request to defer payment. In a separate letter to the Taraszkas, Medeiros stated that Plaintiff had filed a claim to the proceeds and that MetLife was "obligated to make payment" absent legal restraint.[2]

In this fashion, Medeiros continued to update the parties of the others' correspondence throughout the rest of the month. The parties diligently responded, each time requesting payment, as in Plaintiff's case, or deferment, as in the Taraszkas'. In a letter dated January 20, 2011, Plaintiff stated, in relevant part, "please accept this letter as our demand that Met Life [sic] process the claim of [Plaintiff] forthwith, and

---

[1] Def.'s Ex. 5 [Doc. 49-7].
[2] Def.'s Ex. 7 [Doc. 49-9].

that the claim be adjusted in good faith."[3] Medeiros and MetLife interpreted this as a "letter demanding payment under the policy."[4]

Likewise, the Taraszkas continued to object to any payment of the proceeds. In a telephone call on January 24th, the Taraszkas informed Medeiros of their intention to file a lawsuit against MetLife, and in a letter dated January 27th, the Taraszkas advised Medeiros of their preparations to "promptly file[ suit] in Federal Court" and to request a restraining order against MetLife.[5] On February 1, 2011, Medeiros informed Plaintiff of the Taraszkas' litigious intentions and stated that MetLife was "unable to proceed with [Plaintiff's] claim" due to its impending belief of litigation.[6]

On February 4, 2011, Medeiros received a courtesy copy of the complaint the Taraszkas intended to file against Plaintiff. Although MetLife was not named as a defendant, Medeiros referred Plaintiff's claim to Kathy Kurtz, a life claims consultant for MetLife, who, in turn, referred Plaintiff's claim to Regina Soloman-Stowe, MetLife's senior technical insurance advisor. Soloman-Stowe reviewed Plaintiff's claim to ensure "all of the procedures were followed" and to determine if the claim could be resolved between the parties.[7] Eleven days later on February 15, 2011,

---

[3] Def.'s Ex. 10 [Doc. 49-12 at 3].
[4] Def.'s Answer at 8 [Doc. 5 ¶ 23]; *see* Medeiros Dep. 80:22-81:1.
[5] Def.s' Ex. 14 [Doc. 49-16].
[6] Def.'s Ex. 15 [Doc. 49-17].
[7] Soloman-Stowe Dep. 27:10-16.

4

Soloman-Stowe forwarded Plaintiff's claim to MetLife's legal department.[8] Subsequently, on February 28th, the Taraszkas filed suit against Plaintiff in superior court. MetLife, again not named, received a copy of this complaint on March 3, 2011.

The full extent MetLife's investigation of the Taraszkas' claim is as outlined above. MetLife employees did not investigate Dr. Taraszka's cause of death because, as in this case, "there [is] no reason" to investigate when the death is by accident.[9] Moreover, despite Medeiros' understanding that the Taraszkas were competing claimants to the benefits, subsequent discovery has revealed the Taraszkas' neither disputed the beneficiary designation nor sought to collect the proceeds.

To date, the circumstances surrounding Dr. Taraszka's death remain largely the same as they were in February of 2011, save for the instant lawsuit against MetLife. As of the date of this Order, no criminal charges have been filed against Plaintiff in connection with Dr. Taraszka's death. However, if it is determined that Plaintiff contributed to his death, she will be prohibited from collecting the death benefits payable by MetLife under Georgia's Slayer Statute, O.C.G.A. § 33-25-13. Such proceeds would instead be awarded to Eugene Taraszka, the contingent beneficiary

---

[8] What happened after the claim was referred to MetLife's legal department is largely unknown. MetLife's Rule 30(b)(6) witness was unable to respond to several of Plaintiff's questions, although she did testify that MetLife was "trying to see if the parties [could] reach an agreement." Soloman-Stowe Dep. 71:3-9.
[9] Medeiros Dep. 70:14-16.

under the Policy.[10] It is undisputed that neither Medeiros nor Soloman-Stowe knew of Georgia's Slayer Statute when Plaintiff's claim was filed.

Procedural History

On April 15, 2011, Plaintiff filed suit against MetLife in the Superior Court of Walton County, Georgia, claiming (1) breach of contract; (2) bad faith refusal to pay the proceeds under the Policy; and (3) litigation expenses. MetLife was served with process on May 10th and subsequently removed the action to this Court on June 9th. After removal, MetLife requested, and this Court granted, two joint motions for extension of time in which to respond to Plaintiff's complaint. On the final day of its second extension, July 7th, MetLife filed an answer and a counterclaim-in-interpleader against Plaintiff and the Taraszkas over the death benefits.

Shortly thereafter, MetLife filed a motion to join the Taraszkas in interpleader and requested authorization to pay the Policy proceeds with applicable interest into the Court's registry. On October 19, 2011, the Court granted MetLife's motion and joined the Taraszkas as interpleader defendants pursuant to 28 U.S.C. § 1335 and Rules 19 and 21 of the Federal Rules of Civil Procedure.

On April 19, 2012, prior to the close of discovery at the end of the month, MetLife filed the instant Motion, unilaterally precluding Plaintiff from deposing Soloman-Stowe, its Rule 30(b)(6) witness, and Medeiros. Although MetLife expressed

---

[10] *See* O.C.G.A. § 33-25-13.

its displeasure at participating in discovery in the Court's February Scheduling Order, MetLife never filed a motion or a protective order.  In a telephone conference on May 22, 2012, MetLife deigned to enlighten the Court that Plaintiff's bad faith claim was not viable, and it was therefore justified in refusing to participate in discovery.  Without addressing the merits of Plaintiff's claim, the Court ordered MetLife to make its witnesses available for Plaintiff to depose.

## LEGAL STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[11] Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[12]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[13]

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.[14]  The moving

---

[11] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).
[12] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[13] *See id.* at 249-52.
[14] *See id.* at 254-55; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[15]

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or the moving party is not entitled to a judgment as a matter of law.[16] This evidence must consist of more than mere conclusory allegations or legal conclusions.[17] Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."[18]

## DISCUSSION

On summary judgment, MetLife advances three arguments. First, MetLife contends it is a disinterested stakeholder in the case by virtue of this Court's decision to grant interpleader and should be discharged. In the alternative, MetLife argues

---

[15] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).
[16] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26.
[17] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[18] *Celotex*, 477 U.S. at 323.

Plaintiff's bad faith claim fails as a matter of law. And finally, MetLife asserts it is entitled to an award of attorney's fees. The Court will address these matters below.

Disinterested Stakeholder

MetLife first argues that it should be dismissed with prejudice because it has admitted the benefits were payable and has paid the benefits, plus interest, into the Court's registry. In other words, MetLife contends it is immune from liability from Plaintiff's claims because of the Court's previous decision granting interpleader. While the Court agrees that MetLife is a disinterested stakeholder and should ultimately be discharged, the Court disagrees that interpleader automatically shields MetLife from all liability.

Rule 22 of the Federal Rules of Civil Procedure allows a defendant "with claims that may expose [it] to double or multiple liability" to seek interpleader through a counterclaim.[19] The purpose of interpleader "is to allow a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."[20]

---

[19] Fed. R. Civ. P. 22(a)(1)-(a)(2).
[20] *Prudential Ins. Co. of Am. v. Hovis,* 553 F.3d 258, 264-65 (3d Cir. 2009) (quotation omitted).

Here, interpleader protected MetLife only from the prospect of multiple litigation and did not automatically immunize it from liability.[21] The Eleventh Circuit has never explicitly required a stakeholder to show, as a prerequisite for interpleader, "that he had incurred no independent liability to any claimant, such that he was indifferent as between the claimants."[22] Accordingly, MetLife was not required to establish indifference to properly interplead the Taraszkas, and thus, the Court's decision to grant interpleader did not automatically immunize MetLife from liability.

Contrary to MetLife's mechanical immunization theory, the decision to discharge a stakeholder and thus reject those claims against it depends instead on "whether the [claims] are independent of the reason for the filing of the interpleader action."[23] A claim "'is not truly independent if it simply involves an allegation that the interpleader failed to resolve the investigation in favor of the [claimant].'"[24]

In this case, Plaintiff's bad faith and breach of contract claims arise directly out of MetLife's refusal to pay the proceeds and are therefore not truly independent of the interpleader action. On summary judgment, Plaintiff argues that MetLife's failure to

---

[21] *See Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1369 (N.D. Ga. 2008) ("[I]f the interpleader is properly filed, it is <u>possible</u> that the merits of the state law [claims] could be rejected."). (emphasis added)

[22] *Ohio Nat'l Life Assurance Corp. v. Lankkau ex rel. Estate of Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009) (citing *Odum v. Penn Mut. Life Ins. Co.*, 288 F.2d 744, 747-48 (5th Cir. 1961)). See *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[23] *Id.* at 1369-70.

[24] *Sec. Life of Denver Ins. Co. v. Shah*, No. CV411-008, 2012 WL 3777135, at *5 (S.D. Ga. Aug. 29, 2012) (quoting *Hovis*, 553 F.3d 258, 362 (3d Cir. 2009) (cited by *Langkau*, 353 F. App'x at 248)).

10

properly initiate interpleader in a timely and voluntary manner precludes MetLife's dismissal. In particular, Plaintiff challenges MetLife's failure to investigate the Taraszkas' claim and its failure to pay Plaintiff's claim. Neither of these arguments, however, would exist if MetLife had immediately paid Plaintiff the proceeds.[25] Certainly MetLife could have investigated the Taraszkas' claim more in-depth, and it could have voluntarily filed for interpleader in a more timely fashion, but these arguments are premised on MetLife's refusal to pay Plaintiff the proceeds, and thus are not truly independent of the interpleader action.

Accordingly, Plaintiff has failed to indicate how her state law claims against MetLife are not simply an attempt to assert her entitlement to the proceeds, which is the very issue the interpleader was brought to resolve.[26] Thus, MetLife is a disinterested stakeholder, and Plaintiff's breach of contract and bad faith claims against MetLife are **DISMISSED**. MetLife's Motion with respect to this finding is **GRANTED**.

Attorney's Fees

The Court's remaining consideration is MetLife's request for attorney's fees in light of Plaintiff's "strenuous[ ]" resistance to MetLife's dismissal.[27] Specifically,

---

[25] *See Hovis*, 553 F.3d at 264-65 (concluding claimants claim was not independent of interpleader and opining that had the insurer "immediately paid [claimant] the proceeds of [the life insurance policy, the claimant] would not have brought an action against [the insurer] based on any of the causes of action").
[26] *See Shah*, 2012 WL 3777135, at *5 (holding claims for breach of contract and bad faith were not "truly independent" of interpleader and stakeholder should therefore be dismissed).
[27] [Doc. 49 at 19].

11

MetLife requests fees in an unknown amount for the following: opposing Plaintiff's motion to dismiss and her motion for judgment on the pleadings, responding to written discovery in furtherance of Plaintiff's claims, producing requested documents, and "engaging in unnecessary discovery skirmishes with Plaintiff's counsel."[28]

An award of attorney's fees to a disinterested stakeholder is not expressly provided for in either federal statutory or rule interpleader.[29] However, disinterested stakeholders may be awarded attorney's fees for their participation as an equitable remedy.[30] Such awards "are common where the [disinterested] stakeholder has acted in good faith."[31] "The court's authority to make an award is discretionary; there is no right for the stakeholder to recover costs and attorney's fees."[32] The Eleventh Circuit has articulated three justifications to award fees in interpleader actions: (1) "an interpleader action often yields a cost-efficient resolution of a dispute in a single forum," (2) the stakeholder "often comes by the asset innocently and in no way provokes the dispute among the claimants," and (3) the stakeholder's fees "typically are quite minor and therefore do not greatly diminish the value of the asset."[33]

---

[28] [Doc. 47 at 20].
[29] Fed. R. Civ. P. 22; 28 U.S.C. § 1335; *N. Am. Co. for Life & Health Ins. v. Campbell*, No. 3:04-cv-118-J-TEM, 2007 WL 2209249, at *4 (M.D. Fla. July 30, 2007).
[30] *United States v. Sentinel Fire Ins. Co.*, 178 F.2d 217, 236 (5th Cir. 1949).
[31] *Katsaris v. United States*, 684 F.2d 758, 763 (11th Cir. 1982).
[32] *Life Investors Ins. Co. of Am. v. Childs*, 209 F. Supp. 2d 1255, 1256 (N.D. Ga. 2002) (internal quotations omitted).
[33] *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994).

Here, MetLife's delayed action certainly has not produced the "cost-efficient resolution" that justifies interpleader, and the Court cannot positively conclude that MetLife's inaction "in no way provoke[d] the dispute among the claimants."[34]  Finally, with respect to the third justification, MetLife's fees are not admittedly the "quite minor" fees envisioned by the Eleventh Circuit, but, as discussed below, they were not entirely unforeseeable either.[35]  In short, none of the standard reasons for justifying attorney's fees weighs strongly in favor of MetLife.

More importantly, there is a well-recognized, oft-followed, exception to this general rule when a stakeholder's normal course of business involves initiating interpleader actions.[36]  This exception "typically" applies to insurance companies as they can "plan for interpleader as a regular cost of business."[37]  The normal course of business exception can trump the three reasons above for awarding attorney's fees.[38]

Here, the normal course of business exception precludes MetLife from receiving attorney's fees.  Although this exception was raised in Plaintiff's response, MetLife makes no mention, let alone submits any evidence, as to why MetLife, an insurance company, would not expect this type of dispute to arise with consistency in its course of business and, as a result, take appropriate mitigating measures in advance.  Given that

---

[34] *Id.*
[35] MetLife refers to their fees as "substantial" in its Motion.  [Doc. 49 at 4].
[36] *In re Mandalay*, 21 F.3d at 383.
[37] *Id.*
[38] *Id.*

these disputes occur "with some modicum of regularity" in the life insurance business, the Court finds that MetLife "can plan for interpleader as regular cost of business and, therefore, is undeserving of a fee award."[39]

Additionally, the amount of litigation in this case should not come as a surprise to MetLife.[40] MetLife was in a position from the beginning to bring an interpleader action over the proceeds. Despite being fully aware of the underlying litigation between the parties and of the Taraszkas litigious attitude, and despite MetLife's belief that the Taraszkas were competing claimants, MetLife did not file this action until after it was sued by Plaintiff, at which point, its actions were anything but prompt. MetLife initiated interpleader two months <u>after</u> receiving the complaint, using twenty-nine of the thirty days to remove the action and a full three week extension to file its answer. Moreover, MetLife should not now be permitted to hold Plaintiff accountable for fees that are largely its own creation.[41] Once interpleader was granted, MetLife did little, if anything, to expeditiously move this action through discovery, or alternatively, to seek a dismissal. Ultimately, the Court can find no basis to award MetLife's attorney's fees as the age-old maxim requires that "[h]e who seeks equity must do equity."[42]

---

[39] *Id.*
[40] [Doc. 49 at 4].
[41] *Tilley v. Barrs*, No. 5:08-CV-434 (HL), 2009 WL 2750991, at *1-2 (M.D. Ga. 2009) (granting interpleader through an earlier motion and subsequently considering MetLife's separate request for dismissal).
[42] *Hancock Mut. Life Ins. Co. v. Doran*, 138 F. Supp. 47, 50 (S.D. N.Y. 1956).

The Court also rejects MetLife's attempt to punish Plaintiff for resisting dismissal. The Court finds that Plaintiff did not act in bad faith, especially in light of MetLife's failure to move for dismissal.[43] Moreover, "the mere filings of motions, without more, does not display a willful abuse of the judicial process by conduct tantamount to bad faith" on the part of Plaintiff.[44] Thus, this Court declines to use its discretion to award attorney's fees to MetLife where none are warranted under the law. MetLife's request is therefore **DENIED**.

## CONCLUSION

In sum, MetLife's Motion for Summary Judgment [Doc. 49] is **GRANTED in part** and **DENIED in part**. MetLife's request to be discharged is **GRANTED**, and MetLife's request for attorney's fees is **DENIED**. Plaintiff's claims against MetLife are hereby **DISMISSED**.

**SO ORDERED,** this 14th day of February, 2013.

        S/ C. Ashley Royal
        C. ASHLEY ROYAL
        UNITED STATES DISTRICT JUDGE

LMH/bbp

---

[43] *Baton Rouge*, 537 F. Supp. at 1151 ("This court has the inherent power in order to do substantial justice to assess costs and attorneys' fees against offending parties who act in bad faith.").

[44] *Sun Life Assurance Co. of Canada (U.S.) v. Williams*, No. 5:06-CV-139 (CAR), 2007 WL 1541987, at *1 (M.D. Ga. May 24, 2007).